IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LORI PANDIT,<br>       *Plaintiff,*<br><br>v.<br><br>TEMPLE UNIVERSITY,<br>       *Defendant.* | Civil No. 24-1475 |

## MEMORANDUM

COSTELLO, J.                                                                                                February 4, 2025

Plaintiff Lori Pandit has sued Defendant Temple University, alleging promissory estoppel and violations of due process and the Americans with Disabilities Act (the "ADA").[1] The claims stem from Temple's dismissal of Pandit from its Kornberg School of Dentistry for unsatisfactory performance. Temple has moved to dismiss Pandit's promissory estoppel claim (Count II). For the reasons stated below, the Court will grant Temple's motion and allow Pandit leave to amend the complaint.

### I. BACKGROUND

Pandit was a student in Temple's Doctor of Dental Medicine ("DMD") program. Pandit completed the first year DMD curriculum. However, due to Pandit's poor grades, Temple required her to repeat the first year. After Pandit again received poor grades, Temple dismissed her from the DMD program. ECF No. 1-3 ¶¶ 12-13, Ex. A (Dismissal Letter dated July 5, 2023).

---

[1] Pandit filed her lawsuit in state court. Temple timely removed the action to this Court, which has jurisdiction pursuant to 28 U.S.C. § 1331.

The dismissal letter provided instructions for appealing her dismissal and offered Pandit an opportunity to present her appeal at a hearing. *Id*. Nonetheless, Pandit claims that Temple dismissed her without a hearing or due process. ECF No. 1-3 ¶¶ 5, 7.

Additionally, Pandit alleges that Temple "illegally dismissed" her because Temple incorrectly calculated her cumulative grade point average ("GPA"). *Id*. ¶ 21. In support, Pandit cites Temple University Policy 02.10.12 entitled "Repeating a Course (Undergraduate and Graduate)." This policy "allows undergraduate and graduate students to repeat a course to earn a higher grade." ECF No. 1-3, Ex. B (Temple University Policy 02.10.12 (the "Repeating a Course Policy")) at 1. Under that policy, the highest grade earned for the repeated course should be used to calculate the student's GPA. *Id.* Pandit alleges that she passed certain courses during her first year in the DMD program and that Temple should have used those grades in calculating her GPA for the second year. Instead, according to Pandit, Temple used only her grades for her second attempt at the first-year curriculum, and therefore incorrectly calculated her GPA, which resulted in her improper dismissal. ECF No. 1-3 ¶¶ 19-22, 25.

Pandit also alleges that during her enrollment, she "suffered from ADHD which required special accommodations from the University." *Id*. ¶ 29. While Temple granted Pandit an accommodation, Pandit claimed Temple did not offer her "appropriate remediation for her academic difficulties" and failed to make reasonable accommodations "in that faculty and proctors made disparaging remarks on test days concerning her disability." *Id*. ¶¶ 32, 34. These remarks "violated the ADA in that, instead of lessening [her] anxiety about testing, they heightened the same." *Id*. ¶ 35.

II. **LEGAL STANDARD**

To survive a motion to dismiss, a complaint must include sufficient factual matter, taken as true, to show that the claim is facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted).

III. **DISCUSSION**

To state a claim for promissory estoppel, a plaintiff must allege that: "(1) the promisor made a promise that [it] should have reasonably expected would induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise." *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 717–18 (Pa. Super. Ct. 2005) (citations omitted). "These factors are strictly enforced to guard against the 'loose application' of promissory estoppel." *Cornell Narberth, LLC v. Borough of Narberth*, 167 A.3d 228, 239 (Pa. Commw. Ct. 2017) (citation omitted). A plaintiff must plead "facts to show the existence of an express promise made by defendants." *Rapid Circuits, Inc. v. Sun Nat'l Bank*, Civ. No. 10-6401, 2011 WL 1666919, at *18 (E.D. Pa. May 3, 2011) (unpublished) (citation omitted). A plaintiff

3

cannot rely on a "broad and vague implied promise." *C&K Petroleum Products, Inc. v. Equibank*, 839 F.2d 188, 192 (3d Cir. 1988); *Constar, Inc. v. Nat'l Distribution Ctrs., Inc.*, 101 F. Supp. 2d 319, 324 (E.D. Pa. 2000) ("An implied promise is insufficient to support a claim for promissory estoppel.").

    A.    **Plaintiff's Allegations Lack Sufficient Factual Matter.**

Pandit alleges that she was "discharged in violation of the doctrine of promissory estoppel, in that [she] relied on the promises of the Temple handbook and the faculty of the Kornberg School of dentistry, to her detriment." ECF No. 1-3 ¶ 5. Pandit also alleges that she "relied to her detriment on the promises of defendant and its failure to fairly evaluate her academic performance." *Id.* ¶ 16. These conclusory statements represent a threadbare recital of the promissory estoppel elements and lack sufficient factual matter, taken as true, to make out a facially plausible claim.

With respect to promises purportedly made by the faculty of the Dental School, Pandit does not identify or describe any such express promises or any faculty members who allegedly made any such promises.

With respect to the Temple policies or handbook, Pandit invokes the "Repeating a Course Policy." ECF No. 1-3, Ex. B (Temple University Policy 02.10.12) at 1. Pandit seems to be alleging that Temple promised to use her highest grade for any repeated courses and then did not do so, leading to her wrongful dismissal. As an initial matter, as is discussed below, it is not clear that this policy applied to Pandit as a dental school student. However, even assuming for present purposes that it did apply, Pandit has failed to allege what action she took or refrained from taking in reasonable reliance on the policy.² Repeating the first-year curriculum is the only

---

² In her opposition, Pandit argues that "estoppel should operate to deny [Temple] the ability to avoid that there was an express promise by [Temple] which was 'contractual in nature,' based on the Temple

4

action Pandit allegedly took, but it is unclear from the Complaint whether Pandit took that action in reliance on Temple's purported promise to count only her highest grades for repeated classes. Pandit did not, for example, claim that she considered the policy in deciding to repeat the first-year curriculum instead of dropping out or that she decided not to apply herself in certain classes the second time around because she believed her previous grades would count.

Finally, Pandit's allegation that she relied "on the promises of defendant and its failure to fairly evaluate her academic performance, ECF No. 1-3 ¶ 16, is too vague to satisfy any promissory estoppel element. *See, e.g., Voltarelli v. Immaculata Univ.*, 614 F. Supp. 3d 158, 166 (E.D. Pa. 2022) (finding promises that plaintiff "relied on the promises of Sister Acri" and "the promises of Immaculata that they would work with working students" too vague to fulfill the first promissory estoppel element).

The Complaint contains only conclusory statements insufficient to state a claim for promissory estoppel. However, because it not clear whether amendment would be futile, Pandit may attempt to cure these deficiencies by amending her complaint.

### B.  Plaintiff Seemingly Invokes an Inapplicable Policy.

Pandit has an additional problem to deal with should she choose to amend the Complaint. It appears that the policy Pandit invoked as the basis for the promissory estoppel claim does not apply to students in the DMD program. Therefore, it cannot form the basis of Pandit's claim

---

general handbook." ECF No. 12 at 11.  Students at private colleges have contractual rights, but due process protects students at public universities. *Tran v. State Sys. of Higher Educ.*, 986 A.2d 179, 182-83 (Pa. Cmwlth. 2009). Temple is a public university. ECF No. 9 at 14, n. 13. A public university's student handbook is not a contract between the university and the student, and it does not follow, without more, that a student handbook at a public university is an express promise between the university and each student.

unless she can point to some facts that make that policy applicable to her or that would justify her reasonable reliance on an inapplicable policy.

Typically, in evaluating the sufficiency of a complaint, the Court may consider "only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). However, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id.* (citation omitted). A court may also consider a "document *integral to or explicitly relied upon in the complaint* … without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted).

Pandit's Complaint references the rules and regulations of Temple University, the Temple handbook, policies of Temple University, university policies and regulations, and the general rules of Temple University. ECF No. 1-3 ¶¶ 5, 20-23. Moreover, sections of the Academic Regulations for the DMD Program covering grades, promotion, remediation, dismissal, and the appeal of promotions decisions are integral to Pandit's claim, which centers on the dental school's calculation of her grades and her ultimate dismissal. *In re Burlington Coat Factory*, 114 F.3d at 1426 ("[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited."). This is particularly true as the dismissal letter explained that the Student Promotions Committee decided to dismiss Pandit from the program "based upon the Academic Regulations for the D.M.D. Program." ECF No. 1-3, Ex. A (Dismissal Letter dated July 5, 2023). Finally, Pandit does not challenge the authenticity of any document Temple attached to its motion. As a result, this Court

has considered the Repeating a Course Policy explicitly cited by Pandit, as well as Temple Policy 02.20.01 and the Academic Regulations for the DMD program. *In re Burlington Coat Factory*, 114 F.3d at 1426 ("Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them."). These documents are integral to or explicitly relied upon in the Complaint.

Although the Repeating a Course Policy -- the policy relied on by Pandit -- allows undergraduate and graduate students to repeat a course to earn a higher grade and governs how grades for such repeated courses are calculated, this policy does not apply to Pandit because the DMD program is excluded from the graduate school under Temple University Policy. Specifically, Temple University Policy 02.20.01 explains that "[a]ll graduate programs that lead to the Master's Degree and to the Doctor's Degree are included in the Graduate School with the exceptions of the Doctor of Dental Medicine (D.M.D) in the School of Dentistry." ECF No. 9-6 at 4. Thus, the Repeating a Course Policy applies to graduate students, but not to DMD students like Pandit.

Instead, the Academic Regulations for the DMD program govern the academic administration of that program. ECF No. 9-3 at 1. These regulations provide that a DMD student who is not eligible for promotion from one academic year to the next may repeat a year of the curriculum. ECF No. 9-3 at 6, 8. "Barring exceptional circumstances, no student may repeat more than one year for failure to be in good academic standing." *Id.* at 8. "A student who repeats a year of the program is required to retake all courses in that year in which the student received a grade of "B" or less." *Id.* Further, the Academic Regulations explicitly provide that "grades from the repeated courses are used to compute the grade point average" and that

7

"[o]riginal grades remain on the student's transcript, but are not used in the computation of the grade point average." *Id.* at 9. These regulations appear to precisely apply to Pandit's situation.

As a result, without additional factual allegations, Pandit's claim that Temple expressly promised to calculate her GPA in accordance with the Repeating a Course Policy, a policy that seemingly did not apply to her, is not facially plausible. Therefore, the promissory estoppel claim must be dismissed on this additional ground. Conceivably, Pandit may be able to allege facts explaining how the Repeating a Course Policy applied to her in this case. The Court will give her the opportunity to do so.

## IV. CONCLUSION

The Complaint does not plausibly allege each element of a promissory estoppel claim. Accordingly, Pandit's promissory estoppel claim is dismissed without prejudice, and she will have the opportunity to amend her Complaint.

An appropriate order follows.

**BY THE COURT:**

_____
MARY KAY COSTELLO, J.
